IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INVISTA NORTH AMERICA S.À.R.L.,  )
and AURIGA POLYMERS INC.,        )
                   Plaintiffs    )
                                 )
        v.                       )        Civil Action No. 11-1007-SLR-CJB
                                 )
M&G USA CORPORATION and          )
M&G POLYMERS USA, LLC,           )
                                 )
                   Defendants.   )

## MEMORANDUM ORDER

Presently pending before the Court is Defendants M&G USA Corporation and M&G

Polymers USA, LLC's ("M&G" or "Defendants") letter motion, (D.I. 274), requesting a stay of

certain portions of the Court's Memorandum Order issued on March 28, 2013 (the "Order") (D.I.

273). For the reasons set forth below, the Court DENIES the motion.

## I.    BACKGROUND

On March 28, 2013, the Court issued an Order that granted Plaintiff INVISTA North

America S.à.r.l.'s ("INVISTA") discovery-related motion, (D.I. 194), thereby (1) allowing

INVISTA's Italian counsel access to confidential documents produced in this litigation, subject

to certain restrictions; and (2) allowing INVISTA's Italian counsel to disclose in two pending

Italian actions twelve documents produced in this case by M&G.  (D.I. 273)  On March 29, 2013,

M&G submitted its letter motion, informing the Court of its intent to file objections to the first

portion of the Order (i.e., that allowing INVISTA's Italian counsel access to confidential

documents) by April 3, 2013, and requesting that the Court stay the effect of that portion of the

Order during the pendency of M&G's objections.  (D.I. 274)  Later that day, INVISTA submitted

1

a response letter requesting that the Court deny M&G's letter motion. (D.I. 275) On April 1, 2013, M&G submitted a reply letter reiterating its request for a stay. (D.I. 277)

On April 2, 2013, the Court held a teleconference with the parties to discuss M&G's motion. In light of the parties' lack of sufficient briefing on the issue in their prior submissions, the Court ordered expedited briefing. M&G filed its letter brief on April 3, 2013 ("the Motion to Stay") and INVISTA filed its letter brief on April 4, 2013. (D.I. 287, 294) M&G also filed its Objections to the underlying ruling with the District Court on April 3, 2013. (D.I. 289)

## II.   STANDARD OF REVIEW

The granting of a motion for a stay of a court's decision is an "extraordinary remed[y]." *United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978); *In re W.R. Grace & Co.*, 475 B.R. 34, 205 (D. Del. 2012); *see also In re Special Proceedings*, 840 F. Supp. 2d 370, 372 (D.D.C. 2012). In considering whether the imposition of a stay of an order pending appeal is appropriate, courts must consider four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991); *In re W.R. Grace*, 475 B.R. at 205; *St. Joe Co. v. Transocean Offshore Deepwater Drilling Inc.*, 774 F. Supp. 2d 596, 614 (D. Del. 2011).[1]  The moving party bears the burden of

---

[1]     With regard to the appropriate method of analysis of these four factors, some courts have explained that the factors are not to be rigidly applied and that no one single factor is determinative of the result; rather, the court must weigh all factors. *In re Springs*, Civ. No. 13-156-SLR, 2013 WL 435026, at *1 (D. Del. Jan. 31, 2013); *St. John v. Affinia Grp., Inc.*, Civil Action No. 09-2501 (WJM), 2009 WL 1586503, at *2 (D.N.J. June 8, 2009). The Court will

showing that the circumstances justify the granting of a stay. *Nken v. Holder*, 556 U.S. 418, 433-34 (2009); *In re W.R. Grace*, 475 B.R. at 205.

## III.   DISCUSSION

With respect to the first factor—whether the stay applicant has made a strong showing that he is likely to succeed on the merits—the Court finds that no such showing has been made. As Defendants have objected to the Court's decision regarding a nondispositive motion, they would need to demonstrate to the District Court that the Court has made a decision that is "clearly erroneous or contrary to law." *Masimo Corp. v. Philips Elec. N.A. Corp.*, Civil Action No. 09-80-JJF-MPT, 2010 WL 2836379, at *1 (D. Del. July 15, 2010). A finding is clearly erroneous if the determination "(1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Id.* (internal quotation marks and citation omitted). Defendants have not demonstrated that the Court's underlying decision was erroneous, let alone "clearly erroneous or contrary to law"—and Defendants have certainly have not made a "strong showing" that such error was committed.

In their Objections, Defendants argue that the Court's decision was "clearly erroneous and contrary to the law of this Court." (D.I. 289 at 3) In those Objections (and in their corresponding Motion to Stay; collectively, Defendants' "filings"), however, Defendants cite to no "contrary" law of this Court relevant to the instant decision—indeed, Defendants cite to no

---

engage in this weighing process here, though it also notes that there is authority from this District for the proposition that in order to succeed on such a motion to stay "the moving party must 'show satisfactory evidence on all four criteria.'" *In re W.R. Grace & Co.*, 475 B.R. at 205. But whether analyzed under either methodology, for the reasons set out herein, Defendants have not met their burden to demonstrate that a stay is warranted.

case law from this Court at all as to the merits of the issue. (D.I. 287 at 2-3; D.I. 289 at 3-10) More broadly, Defendants cite to no case, from this District or from any other jurisdiction, where a court faced with similar circumstances made a decision contrary to that at issue here.

As to case law from other jurisdictions that do bear on this issue, in its Memorandum Order, this Court cited for supportive authority to a number of cases in which district courts permitted modification of protective orders—modifications that allowed confidential information produced in United States litigation to be shared with a party's foreign counsel in a related litigation overseas. (D.I. 273 at 4 (citing *Abbott GmbH & Co., KG v. Centocor Ortho Biotech, Inc.*, C.A. No. 09-11340-FDS (D.I. 67), slip op. at 2-4 (D. Mass. July 14, 2010); *Oracle Corp. v. SAP AG*, No. C-07-01658 PJH (EDL), 2010 WL 545842, at *2 (N.D. Cal. Feb. 12, 2010); *Infineon Techs. AG v. Green Power Techs. Ltd.*, 247 F.R.D. 1, 3-4 (D.D.C. 2005))). In their filings, however, Defendants do not even mention or attempt to distinguish two of the three cases cited by the Court. As to the third, the decision in *Abbott*, Defendants point to certain factual distinctions between that case and this one, including: (1) in *Abbott*, the protective order at issue permitted the party opposing disclosure to move to prevent disclosure of confidential documents on the grounds that certain of them were irrelevant to the foreign litigation; and (2) in *Abbott*, both related defendants in the United States and foreign jurisdiction distributed the same product, manufactured in the same facility, using the same technology (whereas here, the connections between the M&G entities in the U.S. and Italian litigation are assertedly less close).[2] (D.I. 289 at 7) Yet, of course, the Court's point in citing to *Abbott* was not that its facts were on all fours

---

[2]     In their briefing to the Court prior to the Court's decision on this issue, Defendants referenced *Abbott*, and certain distinctions between it and the present case, though not the specific distinctions they now raise in their Objections. (D.I. 219 at 3)

4

with this case in every respect. Instead, it was to emphasize that courts regularly permit the

sharing of confidential information among counsel for related parties in foreign patent litigation,

and for understandable reasons: such a ruling permits closely connected corporate entities to

avoid taking inconsistent positions in related patent litigation across the globe (while still

subjecting the recipients of such information to clear, forceful restrictions on their ability to

utilize such documents in foreign litigation or elsewhere).

Much of Defendants' Objections (and the argument in their Motion to Stay) asserts that

the Court has clearly erred in failing to conclude that INVISTA has initiated the instant litigation

in this District "solely for the purpose of using it as a discovery device for foreign litigations."[3]

(D.I. 289 at 7; *id*. at 3-5; D.I. 287 at 2) In support of this allegation, one Defendants have made

with increasing force as this litigation has persisted, Defendants cite to facts that, they suggest,

indicate that INVISTA has a far greater stake in the foreign patent litigations between the parties'

---

[3] In doing so, in their Motion to Stay, Defendants assert that the Court's Order was factually flawed in that its ultimate conclusion on this point was "based, in part" on the fact that Defendants commenced the Italian actions (i.e., that it is more difficult for Defendants to argue that the instant U.S. litigation was instigated solely to obtain discovery to be used in an Italian litigation filed years later, when Defendants' affiliate—not INVISTA's affiliate—filed that Italian litigation). (D.I. 287 at 2) Defendants now argue not that this fact is inaccurate, but that instead, in citing it, the Court did not adequately take into account that the Italian litigation was only filed in response to INVISTA's actions in seizing certain of Defendants' PoliProtect APB resin in Italy. (*Id.*) The Court first notes that this point (made in a footnote in the Court's 11-page Order) was made in support of the Court's decision to permit use of twelve of Defendants' redacted documents in the Italian proceedings—*not* in relation to the Court's decision challenged here, regarding INVISTA's Italian counsel's access to certain documents. (D.I. 273 at 5 n.3) Moreover, it is worth noting that at oral argument on the underlying motion, when the Court asked about this very same point—how could Defendants argue that INVISTA intended to use the U.S. litigation as a "stalking horse" to obtain documents in the Italian litigation, when the Italian proceeding is "not one [INVISTA] initiated"—Defendants' response was different than that in their Motion to Stay. (D.I. 239 at 22:19-21 ("[The Italian litigation] is not one that [INVISTA] initiated. These two legal proceedings M&G did initiate. You know, I don't represent M&G in Italy. I don't know why [the Italian litigation] was filed.")).

affiliates than it does here, and that INVISTA plans additional litigation against them in other nations. (D.I. 289 at 3-5, 9-10)

The Court understands that the parties here are hard-fought competitors, as well as the inherent challenges any court would face in identifying the varying motives that such entities might have when engaging in litigation around the globe. And the Court certainly appreciates the importance of confidential information to parties such as these. Indeed, that is the reason that, at every turn in this litigation, the Court has carefully considered (during numerous teleconferences and in-person hearings) the parties' respective requests to share confidential documents with foreign counsel or to use such documents in foreign court proceedings—requests made by INVISTA *and* by Defendants. It is the reason why the Court's rulings have, at times, cabined a party's ability to do so. It is also the reason why, if the Court receives further requests to permit such access or use, it will intently examine the factual and legal bases for those requests.

Yet Defendants have asked the Court to make a factual finding that INVISTA, including its United States-based counsel, have litigated this case not because (as INVISTA has repeatedly asserted) they seek to protect INVISTA's intellectual property rights in this country, but instead because they have sought to perpetuate a kind of sham litigation—one instituted "solely" for the purpose of gaining access to discovery here that may be used overseas. That is, that INVISTA and its counsel have, under false pretenses, instigated a legal proceeding here that has now spanned years—spawning numerous motions, substantial court hours, and a multitude of hearings—all in a calculated effort to abuse the Court's resources solely for these ends. Defendants not only suggest that the Court has erred in failing to come to this conclusion, but that it has made a "strong showing" that the Court has "clearly erred" in doing so. The Court

6

again concludes that it would wish to have a more robust record before it supporting such charges, before making a factual finding of that magnitude.

With regard to the second factor, whether the applicant will be irreparably injured absent a stay, the inquiry is whether the claimed injury is "neither remote nor speculative, but actual and imminent." *In re W.R. Grace*, 475 B.R. at 206. Defendants argue that it will immediately suffer irreparable harm when the confidential documents at issue are provided to INVISTA's Italian counsel as, at that point, "it is impossible to delete that knowledge." (D.I. 287 at 3) Defendants point to *Zander v. Craig Hosp.*, Civil Action No. 09-cv-02121-REB-BNB, 2010 WL 1571213, at *1 (D. Colo. Apr. 20, 2010), a case where a court found that irreparable harm could result if a party were required to disclose privileged information, pending a ruling on a Magistrate Judge's decision. (D.I. 287 at 3) However, the Court agrees with INVISTA that the circumstances in *Zander* are different than those here, as with regard to documents that are arguably privileged, once disclosed, "the privilege is eviscerated." (D.I. 294 at 4) Whereas here, where the interest to be protected is the confidential nature of the information, any asserted harm can be mitigated to a significant degree by limiting disclosure to a few persons (here, certain attorneys for INVISTA's affiliate in Italy) and restricting their ability to otherwise disclose or use those documents (restrictions contained in the Protective Order here, to which these attorneys would be subject).[4] *See Hope for Families & Cmty. Serv., Inc. v. Warren*, No. 3-06-CV-1113-WKW, 2009 WL 1066524, at *4 (M.D. Ala. Apr. 21, 2009) (analyzing second factor of test for motion to stay, and

---

[4]         Indeed, when faced with requests in this case—made by INVISTA *and* Defendants—to allow broader disclosure of the other side's documents that arguably constitute protected trade secrets, the Court has repeatedly ruled that any such material should be redacted prior to disclosure.

7

determining that claim of irreparable injury if protected trade secrets were disclosed was

countered by fact that any disclosure was subject to "strict confines" of protective order); *cf.*

*Infineon Techs.*, 247 F.R.D. at 3 ("But confidentiality concerns can be allayed by the limited

modification [to allow access to confidential documents only to party's German counsel], and by

putting [party's] German counsel under the terms of the Protective Order.") (citing *In re Jenoptik*

*AG*, 109 F.3d 721, 723 (Fed. Cir. 1997)). Although Defendants question whether those

Protective Order safeguards are "sufficient," (D.I. 287 at 3), they are detailed and they were

negotiated by both parties here.

Regarding the third factor, whether the issuance of the stay will substantially injure the

other parties interested in the proceeding, there is some articulable harm here from non-

disclosure. Depriving INVISTA of the efficiencies cited in the Court's Order—for example,

denying its Italian counsel the ability to have awareness of INVISTA's legal position taken in

United States filings that contain reference to Defendants' confidential information—would

constitute a harm. The Court does not necessarily conclude that this harm would be greater than

any possible harm Defendants might claim as to the second factor above, only that the difference

in the magnitude of the alleged harm in both cases is not wide.

As to the fourth factor, where the public interest lies, the Court is not convinced that this

factor meaningfully favors either side. Defendants argue that there is a public interest in the

protection of confidential and trade secret information of a party. (D.I. 287 at 4) However, that

interest is largely, if not entirely, served by the fact that access to the documents at issue is

significantly restricted to a small group of individuals (INVISTA's Italian counsel) who will be

otherwise subject to the strict confines of the Protective Order in this case. *See Hope for*

*Families*, 2009 WL 1066524, at *4 (analyzing fourth factor of test for motion to stay, and determining that public interest in protecting trade secrets is served by fact that any disclosure of information was subject to protective order); *cf. Infineon Techs.*, 247 F.R.D. at 3.

## IV.    CONCLUSION

Ultimately, Defendants have not made a showing that they are likely to succeed on the merits. The magnitude of Defendants' claimed irreparable injury is not great under these circumstances, and there is some articulable harm to INVISTA were the Court's Order to be stayed. The public interest factor does not meaningfully favor either side. Under such circumstances, Defendants' arguments, especially in light of its weak showing of a likelihood of success on the merits, do not support the "extraordinary remedy" of a stay of the Court's decision. For the reasons set forth above, M&G's request for a stay (D.I. 274) is DENIED.

Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Order. Any such redacted version shall be submitted no later than **April 12, 2013** for review by the Court. The Court will subsequently issue a publicly-available version of its Memorandum Order.

Dated:  April 5, 2013

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE