IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INVISTA NORTH AMERICA S.À.R.L.<br>and AURIGA POLYMERS INC.,<br><br>　　　Plaintiffs,<br><br>　　v.<br><br>M&G USA CORPORATION and M&G<br>POLYMERS USA, LLC,<br><br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>) Civ. No. 11-1007-SLR-CJB<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM ORDER

At Wilmington this 25th day of June, 2013, having considered three motions to exclude or strike filed by plaintiffs INVISTA North America S.à.r.l. and Auriga Polymers Inc. (collectively, "Invista") and defendants M&G USA Corporation and M&G Polymers USA, LLC (collectively, "M&G") (D.I. 253; D.I. 284; D.I. 340);

IT IS ORDERED that said motions are granted in part and denied in part, as follows:

1. **Background.** Invista is suing M&G for infringement of United States Patent Nos. 7,919,159 ("the '159 patent), 7,943,216 ("the '216 patent"), and 7,879,930 ("the '930 patent") (collectively, "the patents-in-suit"). (D.I.1; D.I. 7) Before the court are three motions to exclude or strike testimony:  Invista's motion to strike portions of Dr. Robert B. Moore's reply expert report and Dr. Moore's references to and reliance upon certain experimental data ("Invista's first motion to strike") (D.I. 253); M&G's motion to exclude Dr. Richard S. Turner's testimony regarding infringement and secondary

considerations ("M&G's motion to exclude") (D.I. 284); and Invista's motion to strike

M&G's summary declaration and supplemental interrogatory response regarding M&G's

core documents ("Invista's second motion to strike") (D.I. 340).

2. Pursuant to the scheduling order in this case and subsequent amendments,

fact discovery closed on October 5, 2012; expert reports were due December 14, 2012;

rebuttal reports were due January 21, 2013; reply reports were due February 1, 2013;

and expert discovery closed February 20, 2013. (D.I. 18; D.I. 144; D.I. 151) The

parties stipulated that the reply reports would be limited to the topic of "secondary

considerations of obviousness."[1] (D.I. 18 at ¶ 2(d)(1)) The scheduling order also

provides that "[s]upplementations under Rule 26(e) [are] due **as required by the rule**."[2]

(*Id.* at ¶ 2(e)) Trial is set to begin on July 17, 2013. (*Id.* at ¶ 12)

3. **Legal standards.** The court evaluates discovery issues in patent cases

under Third Circuit law. *See Dow Chem. Co. v. Nova Chems. Corp.*, 2010 WL

2044931, at *1 (D. Del. May 20, 2010). Pursuant to Federal Rule of Civil Procedure

26(a)(2)(D), parties must disclose expert testimony "at the times and in the sequence

that the court orders." If a party "learns that in some material respect the disclosure or

response is incomplete or incorrect, and if the additional or corrective information has

not otherwise been made known to the other parties during the discovery process or in

---

[1] The subsequent amendments to the scheduling order did not change this
language; they only changed the deadlines. (*See* D.I. 141; D.I. 155)

[2] Rule 26(e)(2) provides for supplementation to expert reports or disclosures "by
the time the party's pretrial disclosures under Rule 26(a)(3) are due." Pursuant to the
scheduling order and D. Del. LR 16.4, M&G's initial pretrial disclosures were due on
June 5, 2013.

writing," it must supplement or correct its disclosure. Fed. R. Civ. P. 26(e). "However, parties may not use their obligation to supplement as an excuse to violate the clear terms of a scheduling order, unilaterally buying themselves additional time to make disclosures, thereby unduly prejudicing other parties and potentially delaying the progress of a case." *Abbott Labs. v. Lupin Ltd.*, Civ. No. 09-152, 2011 WL 1897322, at *3 (D. Del. May 19, 2011). When expert testimony is not timely disclosed, the court has the authority to exclude it from evidence. *See United States v. 68.94 Acres of Land*, 918 F.2d 389, 396 (3d Cir. 1990).

4. Exclusion of expert opinion and testimony may occur under Rules 37 or 16(f). Under Rule 16(f), the court may impose sanctions if, inter alia, a party or its attorney "fails to obey a scheduling order or other pretrial order." Fed. R. Civ. P. 16(f). Under Rule 37(c)(1), a party that fails to comply with Rule 26(a) or (e) (regarding failure to disclose or supplement) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Courts in the Third Circuit consider five factors when deciding whether to preclude evidence under Rule 37: (1) the prejudice to or surprise of the party against whom the evidence is offered; (2) the ability of that injured party to cure the prejudice; (3) the likelihood of disruption of trial; (4) the bad faith or willfulness involved in not complying with the disclosure rules; and (5) the importance of the evidence to the proffering party ("the *Meyers* factors"). *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)). "Courts must . . . be mindful that the 'exclusion of critical evidence is an "extreme"

3

sanction, not normally to be imposed absent a showing of willful deception or "flagrant disregard" of a court order by the proponent of the evidence.'" *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 506 (D. Del. 2005) (citation omitted).

5. The Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 600 (1993), made clear that courts have to play a gatekeeping role with respect to experts. According to the Supreme Court, Rule 702 of the Federal Rules of Evidence[3] is the primary locus of the gatekeeping role. Pursuant to Rule 702, a party can offer testimony of an expert witness at trial so long as the expert is qualified, the methodology the expert uses is reliable, and the opinion fits the facts of the case. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). A trial judge, then, is tasked with being a "'gatekeeper' to ensure that 'any and all expert testimony is not only relevant, but also reliable.'" *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008).

6. **Invista's first motion to strike.** Invista's first motion to strike seeks to strike various opinions provided by Dr. Moore, M&G's expert. First, Invista contends that 46 pages of Dr. Moore's 52-page reply expert report on invalidity are untimely and

---

[3]Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. § 702.

4

improper because they address topics beyond secondary considerations. (D.I. 254 at 4 n.4, 16-17)  M&G contends that those 46 pages are a supplement to Dr. Moore's opening expert report, timely filed on February 1, 2013, the deadline for expert reply briefs, and permissible under Rule 26(e).  (D.I. 301 at 4-6)  The court finds that, although not labeled as such, the 46 pages at issue were submitted in response to arguments in Dr. Turner's rebuttal report that Dr. Moore's report was incomplete for failing to specifically cite support for his opinions.  Thus, viewed as a supplement, those 46 pages ("Dr. Moore's supplement") were timely filed and appropriately clarified Dr. Moore's opening report.  They included only subject matter that was originally disclosed in Dr. Moore's opening report and presented no new or changed opinions.  Even if there were some prejudice, such prejudice was curable by Invista.  Dr. Moore's supplement was provided to Invista nearly a week before Dr. Turner's deposition (which, in any case, focused on Dr. Turner's report); about two weeks before Dr. Moore's deposition; and about three weeks before the close of expert discovery.  (See id. at 7-8; see also D.I. 322 at 7 n. 7)  Invista had ample opportunity to prepare for Dr. Moore's deposition and, in fact, questioned him about the supplement.  Invista has not made a showing that Dr. Moore's supplement would likely disrupt trial or that M&G made a bad faith or willful attempt to avoid complying with the scheduling order.  At the same time, Dr. Moore's supplement is of high importance to M&G because it provides supporting citations to his previously disclosed opinions.  In light of these considerations, the court does not find exclusion of Dr. Moore's supplement to be warranted.

7.  Invista also asks the court to strike Dr. Moore's reference to testing done by PET Processors LLC and Plastic Technologies, Inc. ("the PET and PTI experiments"),

5

which Dr. Moore used to form his invalidity opinion of non-enablement of the '159 and

'216 patents.  (D.I. 254 at 2-3)  Federal Rule of Civil Procedure 26(a)(2)(B)(ii) requires

disclosure of "the facts or data considered by the witness in forming [his or her

opinions]."  According to Invista, M&G selectively withheld information, such that the

test data and results provided to Invista were "an incomplete set of all facts and data

considered in forming [Dr. Moore's] opinions."[4]  (D.I. 322 at 9; *see also* D.I. 254 at 10-

12)  Invista mainly supports its argument by alleging that M&G failed to initially provide

all information that Dr. Moore considered and has subsequently engaged in "a pattern

of conduct" to improperly block discovery related to the PET and PTI experiments.  (D.I.

254 at 4, 8, 18)  M&G asserts that it has produced all facts and data that Dr. Moore

"considered or relied on" in forming his invalidity opinions and that any additional

information that Invista seeks is privileged, under Rule 26(b)(4)(C)(ii), as

"communications [that] identify facts or data that the party's attorney provided and that

the expert considered in forming the opinions to be expressed."  (D.I. 301 at 10; D.I.

302 at ¶ 11)  The court, at this time, does not find the extreme sanction of precluding all

references and reliance on the PET and PTI experiments to be appropriate and will

deny Invista's motion with respect to Dr. Moore's references to and reliance upon that

data.  However, to the extent the parties' dispute regarding the scope of disclosure is

premised on different interpretations of what constitutes data "considered" by an expert

---

[4]Citing to language in Dr. Moore's objections and response to a subpoena, Invista contends that Dr. Moore's reports only attached materials that were "relied on" by Dr. Moore.  (D.I. 254 at 7) (citing D.I. 255, ex. 9 at 5-6)  However, Dr. Moore's cited response merely mirrored the language used by Invista in its document request, which asked for information "relied on" by Dr. Moore in preparing his expert reports. (*See* D.I. 255, ex. 9 at 5)

in the context of Rule 26, the court notes that M&G cannot withhold data from the PET and PTI experiments, even if Dr. Moore "relied on" only selected portions of the data.[5] Therefore, if it has not done so already, M&G must provide Invista with all of the data and results from the PET and PTI experiments.

8. Invista also asks the court to strike portions of Dr. Moore's April 8, 2013 declaration ("Dr. Moore's declaration") (D.I. 304) submitted with M&G's reply brief for summary judgment of invalidity. (See D.I. 322 at 2) Upon careful review, the court agrees with Invista that Dr. Moore's declaration contains previously undisclosed theories of invalidity in all or portions of paragraphs 7-8, 10, 13-17, 19, 31-35, 37, 44 and 51.[6] (See id. at 5-6) To allow these new expert opinions, in the middle of summary judgment briefing and just prior to trial, would unduly prejudice Invista.[7] Therefore, the court grants Invista's motion to strike with respect to the following new material in Dr.

---

[5]As amended, Rule 26 now protects drafts and certain communications between a party's attorney and a testifying expert from disclosure. Fed. R. Civ. P. 26(b)(4)(B) & (C). However, those amendments "do not impede discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions. For example, the expert's testing of material involved in litigation, and notes of any such testing, would not be exempted from discovery by this rule." Fed. R. Civ. P. 26 advisory committee's note.

[6]However, contrary to Invista's request, the court does not strike (1) Dr. Moore's opinion that sodium and lithium will likely behave differently (D.I. 304 at ¶ 40) or (2) his opinions concerning the '930 patent's indefiniteness (id. at ¶ 55). Dr. Moore opined on the difference between lithium and sodium in his rebuttal infringement report. (See D.I. 237 at PA153 n.4) In addition, he asserted indefiniteness in his opening report as a theory for invalidity of the '930 patent. (See D.I. 255, ex. 5 at 54, 58)

[7]M&G has not attempted to justify the admissibility of Dr. Moore's declaration, either in briefing on Invista's first motion to strike or in briefing on summary judgment of invalidity.

Moore's declaration:[8]

     a.  Opinion that the '925 reference discloses a resin "having both passive and active barrier properties." (D.I. 304 at ¶ 7)

     b.  The teaching of the Moore reference and opinion regarding the N66 nylon polar polymer. (Id. at ¶¶ 8, 10)

     c.  Opinions regarding the combination of the '925 and Moore references. (Id. at ¶¶ 9-10, 13-17)

     d.  Opinions that "there is no nexus between any claimed feature and the reduction of yellowness unless the amount of sodium acetate . . . is more than twice the amount necessary to buffer DEG." (Id. at ¶ 19)

     e.  Opinions and graphs regarding allegedly withheld internal information about yellowness and b* values. (Id. at ¶¶ 31-35)

     f.  Opinions that the '159 and '216 patents teach away from suppressing the formation of DEG. (Id. at ¶ 37)

     g.  Opinions concerning differences in the disclosure of colorants between the provisional and non-provisional applications of the '930 patent. (Id. at ¶ 44)

     h.  Opinions regarding the patentee's alleged inconsistency in disclosing the purity or dilution of colorants. (Id. at ¶ 51)

    9.  **M&G's motion to exclude.**  M&G moves to exclude the testimony of Invista's

---

[8]These portions of Dr. Moore's declaration are also excluded for violating Local Rule 7.1.3(c)(2), which provides that "[t]he party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." D. Del. LR 7.1.3(c)(2). M&G filed Dr. Moore's declaration with its reply brief for summary judgment of invalidity in an improper effort to support the invalidity arguments that it made in its opening brief. (See D.I. 234; D.I. 303)

expert, Dr. Turner, regarding infringement and secondary consideration regarding validity. (D.I. 284) M&G argues that Dr. Turner's infringement opinions are not reliable because he did not perform any testing, instead using the "arbitrary" assumption that the ingredients listed on M&G's core technical documents are present in the accused PoliProtect APB and PoliProtect JB products (collectively, "the PoliProtect products"). (D.I. 288 at 1-3, 5) (citing D.I. 286, ex. A at ¶¶ 147-48, 303-04, 393-94, ex. C at 86:19-87:15) In addition, M&G contends that Dr. Turner, a synthetic chemist, is unqualified to offer opinions on secondary considerations (D.I. 286, ex. B at ¶¶ 380-438) because he "has never sold resin, worked in a sales or marketing capacity, or any other field in which he would interact with the relevant consuming public that would give him experience in, or an understanding of, the resin market, customer purchasing behavior, or sales activities." (D.I. 288 at 4, 12-15) M&G also contends that Dr. Turner is not competent to testify regarding copying of the inventions of the patents-in-suit, and his opinions regarding secondary considerations are merely a summary of information contained in other documents and testimony. (*Id.*)

10. Testing is not required to support an infringement opinion; rather, "a patentee may prove infringement by 'any method of analysis that is probative of the fact of infringement.'" *Mkt. Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363 (Fed. Cir. 2009). Dr. Turner's infringement analysis considered the patents-in-suit and M&G's core technical documents, among other information, and M&G certified its core technical documents as "[t]he composition of . . . . [the] PoliProtect . . . products." Therefore, the court does not exclude Dr. Turner's testimony for being unreliable. The court also rejects M&G's argument with respect to Dr. Turner's qualifications for offering

9

secondary consideration opinions and his competency for opining on copying. While Dr. Turner is not an economist or formally trained in polymer resin sales, he possesses over 40 years of experience as a polymer chemist, of which he spent over 30 years in the polymer industry, including designing polymers with commercial potential. (*See* D.I. 321, ex. 1 at ex. A) The court finds that Dr. Turner's qualifications meet the liberal standard for "specialized knowledge" under Federal Rule of Evidence 702. Therefore, the court denies M&G's motion. To the extent M&G disputes the assumptions underlying Dr. Turner's testimony and his qualifications, such disagreements are more properly reserved for cross-examination.

11. **Invista's second motion to strike.** In addition, Invista moves the court to strike Dr. Moore's March 25, 2013 declaration ("the supplemental declaration") (D.I. 266, ex. G) in support of M&G's summary judgment brief on non-infringement and a supplemental interrogatory response served by M&G on April 29, 2013 ("the supplemental interrogatory response") (D.I. 342, ex. F). (D.I. 340) Invista contends that the supplemental declaration and supplemental interrogatory response are untimely and set forth a new non-infringement defense that M&G's core technical documents do not reflect the composition of the final PoliProtect products. (D.I. 341 at 1) M&G contends that the supplemental declaration and supplemental interrogatory response are proper under Rule 26(e) because they serve to correct material information. (D.I. 346 at 8)

12. M&G produced the core technical documents related to the accused products underlying this dispute during discovery. (D.I. 30) On February 22, 2012,

M&G responded to Invista's interrogatory no. 1[9] by verifying that "[t]he composition of,
and the details requested related to, Defendants' PoliProtect APB and PoliProtect JB
products" had been produced as the core technical documents. (D.I. 237 at PA 189-90)
Subsequently, Invista's infringement contentions consistently referred to and relied on
the core technical documents for the composition of the PoliProtect products, and M&G
did not raise any non-infringement defense on the ground that such reliance was
inappropriate. (See D.I. 342, ex. D) During discovery, Gianluca Ferrari, whom M&G
identified as the person with the most knowledge of the compositions of the accused
products, confirmed in his deposition that the core technical documents were
"reflective" of the components of the PoliProtect products made or sold in the United
States. (See id., ex. E at 14:11-20; D.I. 299 at PA655-57) M&G's expert, Dr. Moore,
never opined in his non-infringement report that the core technical documents were
unreliable or that they did not reflect the compositions of the PoliProtect products. (D.I.
237 at PA127-83) Now, M&G seeks to argue that the core technical documents
describe only the starting ingredients of the PoliProtect products, not the compositions
of the **final** products, and that it has no information about or way of knowing the
contents of the final products. (D.I. 266 at 26; D.I. 342, ex. F at 4) Essentially, M&G
wants to present a non-infringement defense that Invista lacks evidence regarding the
compositions of the PoliProtect products. (See D.I. 266 at 26) M&G raised this
defense for the first time on March 25, 2013, during summary judgment briefing. (Id. at

---

[9]Invista's interrogatory no. 1 asked M&G to "[d]escribe fully and with particularity
the composition of each Accused M&G Product . . . , including by identifying the
chemical entity, amount, and function of each and every component of such product
. . . ." (D.I. 342, ex. B)

25-27) M&G submitted the supplemental declaration to this effect and, following the

summary judgment hearing, submitted the supplemental interrogatory response also to

this effect. (*Id.*, ex. G; D.I. 342, ex. F)

      13. The court finds that M&G's defense regarding the core technical documents

not reflecting the composition of the final PoliProtect products is new and untimely.

This defense alters the entire infringement and non-infringement landscape that was

developed and vetted during fact and expert discovery.[10]  Moreover, the court finds

M&G's contention that its initial interrogatory response put M&G on notice of its defense

to be insufficient; instead, M&G's response made an unqualified representation that the

core technical documents reflect the composition of the PoliProtect products.  M&G was

aware of Invista's infringement theories and even confirmed to the court that its own

non-infringement theories were premised on its proposed claim construction, not the

sufficiency of the core technical documents. (*See* D.I. 237 at PA426-27)  At best, M&G

stood by silently as Invista relied on the core technical documents to establish the

PoliProtect products' compositions.  At worst, M&G purposefully disregarded the

scheduling order and engaged in trial by ambush with its eleventh-hour defense.  Either

way, to allow M&G's belated new non-infringement theory would substantially prejudice

Invista.  Such prejudice would be almost impossible to cure at this stage of litigation

---

     [10]The court is not persuaded by M&G's citations to deposition testimony
confirming that various components were "ingredients" in the PoliProtect products.
(*See* D.I. 346 at 2-7)  While such testimony confirmed that components listed in the
core technical documents were ingredients, they did not put Invista on notice that those
ingredients were not also components in the final PoliProtect products.  Read in the
context of M&G's interrogatory responses, the rest of the deposition testimony, and
M&G's representations to the court, M&G did not dispute during discovery that the core
technical documents described the composition of the PoliProtect products.

because Invista has relied on the core technical documents to this stage to establish the foundation of essential evidence – the PoliProtect products' components. Rule 26(e) "is designed to prevent a party from surprising his adversary by setting forth new facts . . . not disclosed during the discovery process." *PIC Inc. v. Prescon Corp.*, 485 F. Supp. 1299, 1301 (D. Del. 1980). The court finds that M&G's new defense is untimely and highly prejudicial and, thus, grants Invista's motion to strike M&G's supplemental declaration and supplemental interrogatory response regarding the core technical documents.

14. **Conclusion.** For the foregoing reasons, the court grants in part and denies in part Invista's first motion to strike. (D.I. 253)  The court grants the motion only to the extent Dr. Moore's declaration filed on April 8, 2013 contains previously undisclosed opinions and testimony. In addition, the court denies M&G's motion to exclude (D.I. 284), and grants Invista's second motion to strike.[11]  (D.I. 340)

United States District Judge

---

[11]Invista's request for costs and fees associated with its second motion to strike is denied.  (D.I. 340)