IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INVISTA NORTH AMERICA S.À.R.L. and AURIGA POLYMERS INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civ. No. 11-1007-SLR-CJB |
| M&G USA CORPORATION and M&G POLYMERS USA, LLC, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

At Wilmington this 12th day of July, 2013, having reviewed the motion for reconsideration filed by defendants M&G USA Corporation and M&G Polymers USA, LLC (collectively, "M&G"), M&G's proffer as to Dr. Kevin Rollick's proposed testimony ("the proffer"), and the papers filed in connection therewith;

IT IS ORDERED that said motion (D.I. 404) is denied and the proffer (D.I. 403) is rejected, for the reasons that follow:

1. **Background**. Invista North America S.à.r.l. and Auriga Polymers Inc. (collectively, "Invista") filed this action against M&G for infringement of United States Patent Nos. 7,919,159 ("the '159 patent), 7,943,216 ("the '216 patent"), and 7,879,930 ("the '930 patent") (collectively, "the patents-in-suit"). (D.I. 1; D.I. 7) The inventions of the patents-in-suit relate to plastic materials with applications in packaging for oxygen-sensitive foods and beverages.

2. **Motion for reconsideration.** The court issued a memorandum opinion and order dated June 25, 2013 that granted, in relevant part, Invista's motion for summary judgment of indirect infringement of asserted claims 1-3, 5, 8, 9, and 12 of the '216 patent. (D.I. 382, 383) The court found infringement by M&G customers when they melt the accused PoliProtect APB and JB products (collectively, "the PoliProtect products") and thereby mix the components together. (D.I. 382 at 19) The focus on reconsideration is the court's finding that the "cobalt salt" limitation of the '216 patent was met because cobalt neodecanoate is undeniably added during the manufacturing of the PoliProtect products and M&G had submitted no evidence to raise a genuine issue of material fact on summary judgment that it does not exist in the final PoliProtect products. (*Id.* at 24-26)

3. The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Accordingly, a court may alter or amend its judgment if the movant demonstrates at least one of the following: (1) a change in the controlling law; (2) availability of new evidence not available when summary judgment was granted; or (3) a need to correct a clear error of law or fact or to prevent manifest injustice. *See id.* A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made. *See Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa.1993). Motions for reargument or reconsideration may not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990).

4. In its motion for reconsideration, filed July 3, 2013, M&G asserts that the court made an error not of reasoning but of misapprehension of fact and law. (D.I. 405 at 1) Specifically, M&G asserts that the court "misapprehended the facts supporting M&G's position" because Dr. Robert B. Moore's deposition testimony does not disavow his expert report. (Id. at 1, 6-8) It further asserts that the court improperly shifted the burden on infringement to M&G by requiring it to show that no cobalt neodecanoate exists in the PoliProtect products after complexing occurs. (Id. at 1, 5)

5. The court previously reviewed every citation to Dr. Moore's testimony that M&G now relies upon in its motion for reconsideration, and concluded that no reasonable juror could find that there is no cobalt salt in the accused PoliProtect products. Dr. Moore's opinion in his expert report regarding the complexing of cobalt neodecanoate was a general one which cited to a single Invista document regarding whether or not cobalt complexes.[1] (See D.I. 237 at PA166; see also id. at PA515 132:14-134:3) During his deposition, Dr. Moore admitted that he had no opinion as to whether **all** of the cobalt salt complexes in the PoliProtect products.[2] (See id. at PA515

---

[1] Dr. Moore opined in his expert report that "[s]hortly after the cobalt salt is added, . . . the cobalt salt as added no longer exists." (D.I. 237 at PA166) He did not offer any explanation as to this conclusion but simply referred to a single Invista document. Dr. Moore testified during his deposition that the Invista document upon which he relied supported his conclusion that cobalt salt complexes, not that it complexes completely. (Id. at PA515 133:17-23)

[2] M&G attempts to characterize portions of Dr. Moore's deposition testimony as a reluctance to opine, as a matter of fact, that no cobalt neodecanoate exists in the PoliProtect products because he had not conducted any testing to determine the amount of complexing that takes place. (D.I. 405 at 2-4, 6) (citing D.I. 237 at PA515-16 134:4-134:20, 135:24-137:4) However, M&G does not acknowledge the preceding line of questioning to which Dr. Moore clearly responded, "I don't have an opinion about the cobalt – all of the cobalt salt being complexed." (See D.I. 237 at PA515 129:22-130:8)

3

130:4-8) M&G's attempt to create an opinion from an expert who has provided sworn testimony that he has no opinion on the relevant issue cannot sustain a motion for reconsideration or create any credibility issues for a jury.

6. Moreover, the court did not improperly shift the burden of infringement onto M&G. Throughout its analysis, the court did not waver from the principle that Invista carries the ultimate burden by a preponderance of the evidence. After Invista had shown a prima facie case for summary judgment, M&G bore the burden of production "to present specific evidence indicating there is a genuine issue for trial." *Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 707-08 (Fed. Cir. 2005). Without any evidence to support its argument that all of the cobalt neodecanoate complexes out of the PoliProtect products, M&G failed to raise any genuine issue of material fact to preclude summary judgment.[3]

7. **The proffer**. M&G now avers that it should be permitted to offer testimony concerning Dr. Rollick's testing related to cobalt salt complexing. On February 10, 2012, M&G identified Dr. Rollick as a witness in its Rule 26 disclosures, and on March 27, 2013, it identified Dr. Rollick as a fact witness for trial. Invista deposed Dr. Rollick on May 29, 2013. There is no dispute that Dr. Rollick cannot testify at trial as an expert witness because he prepared no expert report, but M&G contends that he should be

---

[3]M&G's request for expedited briefing is denied as moot. Invista's request for attorney fees in connection with the motion for reconsideration (D.I. 415 at 10 n.9) is denied.

permitted to testify as a fact witness.[4] In this regard, and at the court's request, M&G submitted the proffer. (D.I. 403)

8. According to the proffer, Dr. Rollick was employed by M&G and its predecessors and, from 1992 to 2010, worked on polyester resins for packaging applications. (*Id.* at ¶ 2) He was allegedly asked by his manager in 2008 to investigate the cause of an intense blue color observed when cobalt neodecanoate was added during the manufacturing process of the PoliProtect products. (*Id.* at ¶ 3) From investigations he conducted in 2008 and 2009 ("the 2008-09 experiments"), he determined that the color was attributable to the addition of lithium acetate, which converted cobalt neodecanoate to a new species, cobalt tetracarboxylate. (*Id.* at ¶ 4)

9. Dr. Rollick retired in November 2010, but was subsequently hired by M&G's patent prosecution counsel as a consultant to conduct testing in support of a pending patent application, Application No. 13,677,345 ("the '345 application"), on which he is listed as a co-inventor. (*Id.* at ¶ 7) Between December 2012 and May 2013, Dr. Rollick conducted additional experimentation ("the 2012-13 experiments"); M&G asserts that the 2012-13 experiments were aimed at merely reproducing the 2008-09 experiments. (*Id.* at ¶¶ 8-10) Dr. Rollick submitted data from the 2012-13 experiments, along with his opinions drawn from that data, as declarations to the United States Patent and Trademark Office ("PTO") between late 2012 and 2013. (*Id.* at ¶ 11)

10. Opinions based on "scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue" are

---

[4]The court notes for the record that fact discovery closed on October 5, 2012, and expert discovery closed on February 20, 2013. (D.I. 18; D.I. 144)

reserved for expert witness testimony. Fed. R. Evid. 702. Under Federal Rule of Evidence 701:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) **not based on scientific, technical, or other specialized knowledge**.

Fed. R. Evid. 701 (emphasis added).[5]

11. Having reviewed the proffer, the exhibits attached thereto, the documents that allegedly relate to Dr. Rollick's testing (*see id.* at ¶ 6), and Dr. Rollick's deposition, the court finds that none of the data include self-evident facts that cobalt neodecanoate complexes completely. Any opinions or inferences drawn from the data would clearly require scientific, technical, or other specialized knowledge. At the time Dr. Rollick conducted the 2008-09 experiments, he did not express any opinion regarding the extent to which cobalt neodecanoate complexes. As the proffer states, and as confirmed by Dr. Rollick's deposition testimony, the purpose of the 2008-09 experiments was to determine the source of the intense blue color observed during the manufacturing of the PoliProtect products and to find potential solutions. (*Id.* at ¶ 3; Dr. Rollick's deposition at 35:8-38:2, 44:2-10) M&G now requires Dr. Rollick to testify at

---

[5]Rule 701 was explicitly amended in 2000 to

> eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing. . . . By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 . . . by simply calling an expert witness in the guise of a layperson.

Fed. R. Evid. 702 advisory committee's note.

trial on a wholly different issue – the extent to which cobalt neodecanoate complexes – which has emerged during litigation as important to its noninfringement defense. Dr. Rollick's interpretation of data from the 2008-09 experiments, drawn in view of litigation and requiring scientific or technical expertise, cannot constitute fact testimony or lay witness opinions.

12. Dr. Rollick subsequently submitted declarations to the PTO presenting data from the 2012-13 experiments and opining on the extent to which cobalt neodecanoate complexes. For example, in a declaration to the PTO dated November 15, 2012, he submitted various spectroscopy graphs and opined: "It is my belief that because the intensity stopped increasing after increasing 185 units, all cobalt was tetrahedrally-coordinated, that is, in cobaltate form. . . . It is my opinion that all the cobalt in the tested PoliProtect sample . . . is in a cobaltate form."[6] (D.I. 406, ex. G at MG00525590, MG00525600) As Dr. Rollick conceded in his deposition, his opinions in this regard were based on spectroscopy studies that he conducted in the 2012-13 experiments but which he did not conduct in the 2008-09 experiments. (*See* Dr. Rollick deposition at 75:2-76:17) The data from the 2012-13 experiments, as with the 2008-09 experiments, do not include self-evident facts regarding the extent to which cobalt neodecanoate

---

[6]Dr. Rollick submitted another declaration to the PTO on June 13, 2013, which was produced to Invista on June 18, 2013, after Invista had deposed Dr. Rollick. (D.I. 403, ex. I)

complexes.[7] (*Id.* at 33:25-34:4) Any opinions to be drawn would require an expert to explain, interpret, and opine on the data using his scientific or technical knowledge.

13. M&G suggests that, because Dr. Rollick was hired by M&G's patent prosecution counsel rather than its litigation counsel and because his opinions were submitted in connection with the '345 application, he should be able to present those opinions he submitted to the PTO as fact testimony in this trial. (D.I. 403 at 6) Dr. Rollick's conclusions drawn from the 2012-13 experiments, however, are expert opinions, made as a paid consultant contemporaneously with this litigation. They are not within the purview of a fact witness and, most significantly, Dr. Rollick's testimony (whether fact or expert) regarding the extent to which cobalt neodecanoate complexes was never vetted during discovery and, submitted on the eve of trial, is untimely.

14. To the extent M&G seeks to rely on Dr. Rollick's testing and testimony to support its motion for reconsideration, a motion for reconsideration "may not be used by the losing litigant as a vehicle to supplement or enlarge the record provided to the [c]ourt and upon which the merits of the decision was made unless new factual matters **not previously obtainable** have been discovered since the issue was submitted to the [c]ourt." *Schering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998). M&G admits that Dr. Rollick's testimony is "new evidence" that was not presented to the court during summary judgment briefing. (D.I. 405 at 10) Nevertheless, it asserts that a manifest injustice exception applies to warrant the court's consideration of the new

---

[7]Indeed, Dr. Rollick admitted during his deposition that his role in prosecuting the patent included "the interpretation of the results." (Dr. Rollick's deposition at 33:25-34:4)

8

evidence. (*Id.*) (citing *Sabatini v. Its Amore Corp.*, 455 F. App'x 251, 254-55 (3d Cir. 2011)). The new evidence that M&G seeks to introduce was available to it before the summary judgment stage. In light of M&G's own delay and the court's finding that Dr. Rollick's testimony, in relevant part, is not proper for a fact witness, manifest injustice will inure to Invista if this testimony were permitted, not the reverse.

15. **Conclusion**. For the foregoing reasons, the court denies M&G's motion for reconsideration and rejects the proffer.

*[signature]*
United States District Judge