IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INVISTA NORTH AMERICA S.A.R.L., and AURIGA POLYMERS INC., <br><br> Plaintiffs, <br><br> v. <br><br> M&G USA CORPORATION and M&G POLYMERS USA, LLC, <br><br> Defendants. | Civ. No. 11-1007-SLR |

**MEMORANDUM ORDER**

At Wilmington this 14th day of January, 2015, having reviewed the various pending motions and the papers submitted in connection therewith;

IT IS ORDERED that, with respect to the related motions filed by defendants M&G USA Corporation and M&G Ploymers USA, LLC ("M&G") to stay (D.I. 609) and for relief pursuant to Fed. R. Civ. P. 60(b) (D.I. 613), said motions are denied for the reasons that follow:

1. **Background to the dispute.** In October 2011, plaintiffs Invista North America S.A.R.L. and Auriga Polymers Inc. (collectively referred to as "Invista') filed a complaint against M&G asserting infringement of three patents, including U.S. Patent No. 7,943, 216 ("the '216 patent). Thereafter followed a course of aggressive litigation, culminating in the entry of final judgment for Invista on April 1, 2014.[1] (D.I. 552) M&G

---

[1] Specifically, the court found infringement of claim 4 of the '216 patent, and the jury found the '216 patent not invalid. (D.I. 437; D.I. 549)

filed its notice of appeal to the Federal Circuit on April 23, 2014. (D.I. 567) Not to be deterred, M&G filed its first request for reexamination with the United States Patent and Trademark Office ("PTO") on April 29, 2014 and a second such request on September 12, 2014. (D.I. 619 at 2) On October 7, 2014, the Federal Circuit affirmed the judgment against M&G without opinion. (D.I. 601) Nonetheless, the PTO - on October 23, 2014 - merged the two reexaminations and issued the Merged Office Action rejecting all the claims of the '216 patent. (D.I. 610 at 3)

2. I note at the outset that only because damages and willfulness were bifurcated is it possible for M&G to even posit the suggestion that it get yet another bite at the apple (its Rule 60(b) motion) or that the day of reckoning be further postponed pending completion of the reexamination process. I truly regret that my prior practice of bifurcating has led to this end.[2] Indeed, in analyzing the pending motions, I feel as if I have been transported to Alice in Wonderland territory, where nothing is as it seems, particularly a final judgment affirmed by the Federal Circuit, the same final arbiter of the proceedings in the PTO. Nevertheless, because it is required that I spend my scarce resources on such motions, I do so now.

3. **Motion to stay.** I start with the observation that, because the '216 patent is not a business method patent addressed by § 18(b) of the AIA, the question of whether to stay the damages phase of this litigation is governed by the traditional equitable regime where stays are procedural tools in a judge's arsenal to be used at the judge's

---

[2]Ironically, bifurcation made sense to me because, once the liability phase had been finally resolved by the Federal Circuit, the parties would be in a better position to negotiate a business solution without the risks attendant to a jury trial.

2

discretion. As recognized by the Supreme Court in *Landis v. North American Co.*, 299 U.S. 248 (1936),

> the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Id.* at 254-255. *See also Betchel Corp. v. Local 215, Loaborers' Inter. Union of North America, AFL-CIO*, 544 F.3d 1207, 1215 (3d Cir. 1976). The competing interests generally are considered to be: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and a trial date has been set. *See, e.g., United Sweetner USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991). *See also, Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 737-38 (3d Cir. 1983) (considering the length of stay, the balance of harms, and whether the stay will simplify issues and promote judicial economy).

4. The most remarkable aspect of M&G's motion is its concerted effort to ignore the fact that the Federal Circuit issued an adverse final decision. (D.I. 610 at 1-3) Instead, M&G analyzes the motion as if we were writing on a blank slate without over three years of litigation behind us. I decline to do so, and find that a stay would impose a clear tactical disadvantage to Invista, the party with a final judgment in hand obtained at great cost, given the fact that M&G has defended itself vigorously. While I understand M&G's hope that it can ultimately avoid the consequences of the judgment,

3

that is pure speculation.³ I believe the better path is to take the litigation to finality. With a damages award in hand, I will consider whether it is appropriate to maintain the status quo at that point in time,⁴ depending on the status of the reexamination proceeding and any other factors the parties present. I believe this solution honors the integrity of the trial process, balances the harm to both parties, and promotes judicial economy. Particularly with respect to the last factor, given the extraordinary procedural posture of this litigation vis a vis its administrative counterpart, no one can predict what the ultimate outcome will be (or when it will be made known), since the responsibility to review the PTO's decision on the validity of the '216 patent belongs to the Federal Circuit. It strikes me that it is in the best interests of the parties and this court to move forward so that Invista can enforce its judgment promptly.

**5. Motion under Rule 60(b).** Federal Rule of Civil Procedure 60(b) provides, in part, that the court "may relieve a party . . . from a final judgment, order, or proceeding for" various reasons, including "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed.R.Civ.P. 60(b)(2). The "newly discovered evidence" identified by M&G (D.I. 614 at 6-10) includes the "PTO's update to the prosecution history" from the reexamination proceedings initiated by M&G **after** judgment had been entered by this

---

³It is my impression that, in virtually every case being litigated in this court, the PTO grants the requests for reexamination and rejects all claims. I have never been apprised of a situation like the one at bar, however, where the PTO did so after the Federal Circuit has affirmed a judgment of no invalidity.

⁴To wit, require that M&G invest the amount of the award in an interest-bearing account for the benefit of Invista.

4

court. I reject the notion that the current status of the reexamination proceedings is "new" evidence that could not have been discovered prior to entry of judgment under the circumstances at bar. Moreover, because the PTO's non-final Office Action is simply a preliminary determination of its legal conclusions, it does not constitute the kind of "new evidence" that courts generally view as sufficient to change the outcome of the trial.

6. M&G also argues that Invista has made post-verdict "contradictory representations" to the European Patent Office regarding certain limitations of the European counterpart to the '216 patent, thus warranting relief pursuant to Rule 60(b)(3), that is, based on "fraud, misrepresentation, or misconduct by an opposing party." (D.I. 614 at 11-13) "In order to sustain the burden of proving fraud and misrepresentation under Rule 60(b)(3), the evidence must be clear and convincing, and cannot serve as an attempt to relitigate the merits." *Biggins v. Willey,* Civ. No. 09-862-GMS, 2014 WL 2760570, at *1 (D. Del. June 16, 2014). I reject the notion that submissions discussing a different patent with different claims under different law can serve as grounds sufficient to meet the above standard.

7. Finally, despite the fact that M&G never presented the defense of indefiniteness at trial or on appeal, M&G argues that the decisions in *Nautilus, Inc. v. Biosig Instruments, Inc.,* 134 S. Ct. 2120 (2014), and *Teva Pharms. USA, Inc. v. Sandoz, Inc.,* 723 F.3d 1363 (Fed. Cir. 2013), should now be considered pursuant to Rule 60(b)(6), on the premise that, "[h]ad the Court been privy to these changed circumstances, the outcomes on invalidity and infringement would have been different." (D.I. 614 at 15-16) Relief from a judgment under Rule 60(b)(6) is "extraordinary relief"

5

and may only be granted "upon a showing of exceptional circumstances." *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 273 (3d Cir. 2002). I decline to give M&G a second bite at the apple and litigate the case on new grounds.

8. With respect to the injunction in place, M&G argues that, pursuant to Rule 60(b)(5),[5] "the PTO's rejections make prospective application of the injunction no longer equitable." (D.I. 614 at 13) The case law cited by M&G in support of its position are factually distinguishable, involving district court decisions made without the benefit of Federal Circuit review. As explained above, I decline to nullify a remedy approved by the Federal Circuit on the basis of reexamination proceedings still in their infancy. Having said that, I will entertain further discussion regarding the issue of whether either one or both parties should post bonds of sorts to ensure that neither party is unduly prejudiced by the way these unusual mirrored proceedings advance.

United States District Judge

---

[5]"[T]he judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable."