IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INVISTA NORTH AMERICA S.À,R.L. and AURIGA POLYMERS INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civ. No. 11-1007-SLR ) |
| M&G USA CORPORATION and M&G POLYMERS USA, LLC, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM ORDER**

At Wilmington this 28th day of December, 2015, having reviewed defendants'[1] motion for relief from the continued application of the injunction entered by the court in March 2014, as well as the papers filed in connection therewith;

IT IS ORDERED that said motion (D.I. 678) is granted, for the reasons that follow:

1. **Background.** By order dated March 31, 2014, the court granted plaintiffs'[2] motion for entry of a permanent injunction (D.I. 550; D.I. 564) following entry of judgment in favor of plaintiffs at the conclusion of the July 2013 jury trial (D.I. 552). In the court's memorandum opinion accompanying the order, the court cited four primary reasons for granting plaintiffs the extraordinary relief associated with entry of an

---

[1] M&G USA Corporation and M&G Polymers USA, LLC (collectively "M&G").

[2] Invista North America S.À.R.L. and Auriga Polymers Inc. ("Auriga") (collectively "plaintiffs").

injunction: (a) plaintiffs and defendants were the only two manufacturers of "high barrier" monolayer polyester barrier resins in the relevant market (barrier polyester market); (b) there was a sufficient nexus between the properties embodied by the patented design and customer demand to warrant injunctive relief; (c) plaintiffs would suffer "irreparable injuries including lost sales and market share;" and (d) plaintiffs' current minimal United States sales were due to the competition from defendants' product and not other factors. (D.I. 549 at 36-40) In their pending motion, defendants argue that the rationale for the original issuance of the injunction order has changed and warrants at least a modification of the injunction. The court has jurisdiction over the matter pursuant to 28 U.S.C. § 1338.

2. **Standard of review.** Under Rule 60 of the Federal Rules of Civil Procedure,

> the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons . . . (5) the judgment has been satisfied, released, or discharged or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no long equitable that the judgment should have prospective application; or (6) any other reasons justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b). A motion filed pursuant to Rule 60(b) is addressed to the sound discretion of the trial court guided by accepted legal principles applied in light of all relevant circumstances. See Pierce Assoc., Inc. v. Nemours Found., 865 F.2d 530, 548 (3d Cir. 1988). Although relief from judgment pursuant to Rule 60(b)(6) may only be invoked upon a showing of extraordinary circumstances, Coltec Indus., Inc. v. Hobgood, 280 F.3d 262, 273 (3d Cir. 2002), the Third Circuit has explained that a Rule 60(b) motion should be granted when "appropriate to accomplish justice." Boughner v. Sec'y of Health, Educ. & Welfare, 572 F.2d 976, 978 (3d Cir. 1978). In this regard, a

judgment should not have prospective application if the moving party can demonstrate "a significant change in either factual conditions or in law." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992).

3. **Discussion.** Defendants start their analysis with the argument that, because the '216 patent[3] has been invalidated by the PTO on reexamination, prospective application of the injunction is no longer equitable. The court recognizes that the PTO has the authority to reexamine the patentability of the '216 patent under 35 U.S.C. § 302. The court also recognizes that the PTO's determination is far from a final one, and that the Federal Circuit has already reviewed the '216 patent on appeal and affirmed the jury's verdict of validity. (D.I. 436; D.I. 601) Therefore, while the reexamination proceeding may be one factor to review in connection with defendants' request for relief, it is by no means dispositive.

4. With respect to the "different competitive reality" that exists now, the record before the court reflects several significant factors which have changed since (or were not apparent to the court in) March 2014. First, although Auriga "competes directly with M&G's enjoined PoliProtect JB product," Auriga does so with its "OxyClear® Barrier PET" which, by plaintiffs' admission, is not a commercial embodiment of the '216 patent. (D.I. 549 at 36, n.25) This fact undermines the court's previous finding that defendants' PoliProtect product and plaintiffs' PolyShield product were the only "high barrier" monolayer polyester barrier resins available in the market. Indeed, the current record indicates that there are at least two other suppliers of "high barrier monolayer

---

[3] U.S. Patent No. 7,943,216.

PET containers for beer (requiring active and passive barrier) or juice (requiring only an active barrier)" - ColorMatrix and PlastiPak - besides M&G and Auriga. (D.I. 679 at 8-9) Moreover, the fact that plaintiffs have made no commercial in-roads with its PolyShield product since March 2014 indicates that the patented technology is not plaintiffs' primary revenue source[4] and calls into question whether such technology actually drove customer demand for defendants' PoliProtect product (as opposed to its bi-component pellet feature, as argued by defendants initially).

5. These changed circumstances, when plugged into the traditional analytical framework for entry of injunctive relief,[5] warrant the relief requested by defendants. As to the first prong of the test, likelihood of success on the merits, the PTO's finding of invalidity on reexamination - while not final - certainly adds an element of ambiguity to the analysis, when there was none in March 2014. The second prong of the analysis is irreparable harm. As noted, the harm advanced by plaintiffs in 2014 was "lost sales and market share, leading to the loss of research and development activities, a loss of goodwill in the market, and a forced loss of their patent exclusivity." (D.I. 468 at 5-6; D.I. 549 at 37-38) Plaintiffs have had more than 18 months to generate market share for their PolyShield product and have failed to do so. (D.I. 711) Without sales in the first instance, it is difficult to justify imposition of injunctive relief based on lost sales and market share. It is also appropriate at this point to note that the parties settled the instant litigation and agreed upon a royalty rate as adequate compensation to plaintiffs

---

[4]See, e.g., Martek Biosciences Corp. v. Nutrinova Inc., 520 F. Supp. 2d 537, 558-59 (D. Del. 2007).

[5]See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006).

for any past infringement (D.I. 679, ex. K); i.e., any harm to Auriga's sales of its 2310 resin is not irreparable and can be adequately remedied at law. *See Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1334-1348 (Fed. Cir. 2006).

6. With respect to the balance of hardships, the court agrees that Auriga's OxyClear 3500 resin (which is not a commercial embodiment of the '216 patent) should not be protected from competition under the umbrella of the instant litigation, and that the likely harm to Auriga - loss of sales in a multiple supplier market - is compensable with a reasonable royalty that can be aggregated during the pendency of the appeals from the PTO's finding of invalidity. In weighing defendants' continuing hardship in not being permitted to compete for sales to Amcor Rigid Plastics[6] (Amcor being the biggest potential customer in the United States for PET container solutions in the juice container market) against plaintiffs' likely harm, this factor weighs in favor of defendants. The public interest is evenly balanced at best, with the '216 patent's validity under scrutiny and its legal monopoly reducing competition.

7. **Conclusion.** Balancing the equities in light of the record discussed above supports defendants' request to stay enforcement of the injunction pending final resolution of any appeals from the PTO's final rejection of all claims of the '216 patent.[7]

---

[6] Defendants have supplemented the record with papers indicating that the injunction, if not lifted, will "force" them to "relocate [their] North American Specialty Resin Manufacturing to an existing facility in Mexico" and close their plant in West Virginia. (D.I. 706) Although the court does not base its decision on this untested assertion, there can be no doubt that defendants' loss of Amcor's business due to the injunction has impacted their business plan in a dramatic way.

[7] *See Ultratec, Inc. v. CaptionCall, LLC*, 611 Fed. Appx. 720 (Mem.) (Fed. Cir. June 30, 2015) (non-precedential).

Therefore, during the pendency of the stay:

IT IS FURTHER ORDERED that M&G shall deposit into an escrow account a royalty (1cpp) for every pound of PoliProtect sold in the United States. The accrued funds in the escrow account shall become accessible to Auriga should the claims of the '216 patent survive unchanged.

*[signature]*
United States District Judge